# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-81445 -BLOOM/Reinhart

NEELU AVIATION, LLC,

     Plaintiff,

v.

BOCA AIRCRAFT MAINTENANCE, LLC, *et al.*,

     Defendants.

_____/

### OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant Boca Aircraft Maintenance, LLC's Motion to Dismiss, ECF No. [70], Defendant Skurka Aerospace, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction relating to the Amended Complaint, ECF No. [82], and Defendant Skurka Aerospace, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction relating to Defendant Advent Aircraft Systems, Inc.'s Crossclaim, ECF No. [99]. The Court has reviewed the motions, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendant Boca Aircraft Maintenance, LLC's Motion to Dismiss, ECF No. [70], is denied in part and granted in part, and Defendant Skurka Aerospace, Inc.'s Motions to Dismiss, ECF Nos. [82] and [99], are granted.

## I. BACKGROUND

On April 16, 2019, Plaintiff Neelu Aviation ("Plaintiff") filed an Amended Complaint against Boca Aircraft Maintenance, LLC ("Boca Aircraft"); Skurka Aerospace, Inc. ("Skurka"); Advent Aircraft Systems, Inc. ("Advent"); and One Aviation Corp. ("One Aviation"). ECF No. [63].

Plaintiff is the owner of an Eclipse 500 Jet ("Jet"). One Aviation is a company that services Eclipse jets. *Id.* at ¶ 18. Boca Aircraft is one of One Aviation's service maintenance facilities. *Id.* On or around June 26, 2018, Plaintiff hired Boca Aircraft to perform a multi-point 300-hour annual inspection of Plaintiff's Jet. *Id.* at ¶ 9. Plaintiff alleges that, upon completion of the inspection, Boca Aircraft cleared the Jet as "flight ready," when it was not. *Id.* at ¶¶ 9, 11. Boca Aircraft also worked on the Jet's anti-lock brake system. *Id.* at ¶ 10. After the inspection, Plaintiff flew the Jet from Boca Aircraft's facility in Boca Raton, Florida and, due to a generator failure, was required to make an emergency landing in Jacksonville, Florida. *Id.* at ¶ 11. The Jet was then flown back to Boca Raton Airport for testing and, upon landing, the anti-lock brakes failed causing damage to the Jet. *Id.* at ¶ 12.

Plaintiff alleges that it acted in reliance on Defendant One Aviation's representation that Defendant Boca Aircraft's maintenance facility would service and repair the Jet. *Id.* at ¶ 64. Due to Plaintiff's lack of experience in Jet maintenance it alleges to have deferred and detrimentally relied on the advice of Defendant Boca Aircraft, which ultimately caused damages, by clearing it to fly when the Jet was not flight ready and by damaging the anti-lock brakes during the multi-point 300-hour inspection. *Id.* at ¶¶ 25-26. The Jet took approximately 75 days to repair, during which time, Plaintiff claims it sustained lost profits. *Id.* at ¶ 14. The Jet diminished in value due to the damage report history. *Id.* at ¶ 15.

The Jet's generators ("Subject Generators") and brake system were manufactured by Skurka and Advent, respectively. *Id.* at ¶¶ 56, 66. Although Defendant Skurka warranted that the Subject Generators were reasonably fit for their intended use, they failed while being used for their intended purpose, requiring Plaintiff to make an emergency landing and causing injury to Plaintiff. *Id.* at ¶¶ 57-58. Although Defendant Advent warranted that the brake system was reasonably fit

for its intended use, the product failed while being used for its intended purpose, causing injury to Plaintiff upon landing. *Id.* at ¶¶ 67-68.

In its grounds for jurisdiction, Plaintiff states that Defendant Boca Aircraft is a Florida corporation with its principal place of business in Palm Beach County, Florida; Defendant One Aviation is a New Mexico corporation that does business in Palm Beach County; Defendant Skurka is a Delaware corporation that does business in Palm Beach County; and Defendant Advent is a Delaware corporation that does business m Palm Beach County. *Id.* at ¶¶ 3-6.

Plaintiff asserts claims for Breach of Fiduciary Duty (Count I), violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (Count II), Negligent Misrepresentation (Count III), Negligence (Count IV), and Conversion (Count V) against Defendant Boca Aircraft. *Id.* at ¶¶ 20-54. Plaintiff asserts a claim for Breach of Implied Warranty of Merchantability (Count VI) against Defendant Skurka, *Id.* at ¶¶ 55-59, a claim for Fraud in the Inducement (Count VII) against Defendant One Aviation, *Id.* at ¶¶ 60-64, and a claim for Breach of Implied Warranty of Merchantability against Defendant Advent (Count VIII), *Id.* at ¶¶ 65-69.

Defendants Boca Aircraft and Skurka filed motions to dismiss the claims against them for independent bases. Defendant Boca Aircraft moves to dismiss Counts I-V for failure to state a claim. ECF No. [70]. Defendant Skurka moves to dismiss the action against it entirely for lack of personal jurisdiction. ECF No. [82].

On June 20, 2019, Defendant Advent filed an Answer to the Amended Complaint and two Crossclaims. ECF No. [89]. Defendant Advent asserts a First Crossclaim for Negligence against Defendant Boca Aircraft. *Id.* at ¶¶ 97-104. Defendant Advent asserts its Second Crossclaim for Strict Liability against Defendant Skurka. *Id.* at ¶¶ 105-1114. Defendant Boca Aircraft has filed an Answer to Advent's Crossclaim. ECF No. [98]. Defendant Skurka has filed a Motion to Dismiss

Advent's Crossclaim for Lack of Personal Jurisdiction, ECF No. [99], and a Motion to Dismiss for Failure to State a Claim. ECF No. [101].

This Order addresses Defendant Boca Aircraft's Motion to Dismiss the Amended Complaint and Defendant Skurka's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction, each in turn.

## II.    LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007); see *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These pleading elements are required for a party to survive a 12(b)(6) motion, which requests dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this rule does not apply to legal conclusions; courts "are not bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

"In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing *Cable/Home Commc'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)). "Once the plaintiff pleads sufficient material facts to form a basis for in personam jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1338 (S.D. Fla. 2014), aff'd, sub nom, *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. June 15, 2015). "If the defendant provides sufficient evidence, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *MPS Entm't, LLC v. Headrush Apparel, Inc.*, 2013 U.S. Dist. LEXIS 141307, 2013 WL 5446543, at *2 (S.D. Fla. Sept. 30, 2013) (quoting *Thomas v. Brown*, 504 Fed. App'x 845, 847 (11th Cir. 2013)).

## III. DISCUSSION

### a. Defendant Boca Aircraft's Motion

In its Motion, Defendant Boca Aircraft argues that Counts I-V of the Amended Complaint must be dismissed due to Plaintiff's failure to allege the necessary elements of each offense. ECF No. [70]. Plaintiff responds that the allegations are sufficient and Defendant has waived its right to seek dismissal of Counts I, III, and IV (which were also asserted in the original complaint) by

failing to do so in its answer to the original complaint. ECF No. [72]. Plaintiff relies upon Rule 12(b), which states "[a] motion asserting any of [the Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. Pro. 12(b).

The Court first dispenses with the Plaintiff's waiver argument. The filing of an amended complaint "supersedes any former pleadings" by a plaintiff and becomes the operative pleading. *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006); *see Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *Varnes v. Glass Bottle Blowers Asso.*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982); *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007). As such, when Plaintiff filed the Amended Complaint, the first original complaint became a "legal nullity." *Hoefling*, 811 F.3d at 1277.

In its decision to answer or file a Rule 12 responsive motion to the Amended Complaint, Defendant Boca Aircraft chose to file a motion to dismiss. Defendant's Motion to Dismiss is therefore procedurally proper and the Court considers the merits of its arguments. Alternatively, Plaintiff argues that Defendant's Motion to Dismiss should be denied as Defendant offers no basis for its conclusory assertions that Counts I-V fail. ECF No. [72]. The Court will address each count in turn.

### i. Count I - Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty include: (1) the existence of a fiduciary duty, and (2) the breach of that duty such that it is the proximate cause of Plaintiff's damages. *See Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Plaintiff is not required to prove the existence of a fiduciary relationship but must allege that one exists with sufficient plausibility. *Twombly*, 550 U.S. at 555. The Court must accept the plaintiff's allegations as true and evaluate all plausible inferences in favor of the plaintiff.

In its Motion to Dismiss, Defendant Boca Aircraft first argues that Count I for Breach of Fiduciary Duty should be dismissed because Plaintiff has failed to allege the first element, the existence of a fiduciary duty. ECF No. [70], at 2. Plaintiff responds that its business relationship with Defendant Boca, whereby Plaintiff would adhere to the guidance of Defendant Boca Aircraft as an expert in the field, rose to the level of a fiduciary duty. ECF No. [72], at 7.

Plaintiff and Defendant both rely on *Gracey v. Eaker,* 837 So. 2d 348 (Fla. 2002) in support of their respective positions. In *Gracey*, a husband and wife sued their psychotherapist for breach of fiduciary duty, after the psychotherapist divulged to each of them what the other had said in confidence. *Gracey*, 837 So. 2d at 350. As Defendant Boca Aircraft correctly points out, the plaintiffs in *Gracey* brought their claim for breach of fiduciary duty under a statutorily established fiduciary relationship. *Id.* at 351. Here, no such statutorily established relationship exists. Defendant Boca Aircraft further contends that the Amended Complaint lacks the facts necessary to show an express or implied fiduciary relationship and that Plaintiff's mere "label" of a fiduciary relationship is insufficient to state a claim for breach of fiduciary duty. *Id.* at 4-5.

A statute establishing a fiduciary relationship is not required to sufficiently plead a claim for a breach of fiduciary relationship. *Gracey*, 837 So. 2d at 353. "'A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation.'" *Id.* at 354 (quoting *Restatement (Second) of Torts, § 874 cmt. a*). A fiduciary relationship can be either expressly or impliedly created. *Capital Bank v. Mvb*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994). "Courts have found a fiduciary relationship implied in law 'when confidence is reposed by one party and a trust accepted by the other.'" *Capital Bank*, 644 So. 2d at 518 (quoting *Dale v. Jennings*, 90 Fla. 234, 244, 107 So. 175, 179 (1925)). This Court has previously held that:

> [u]nless the relationship is formed through an express agreement, whether a fiduciary relationship exists is necessarily fact-specific to a particular case: "Therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6) because it is often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship."

*Hansen v. Premier Aviation Holdings*, LLC, No. 17-cv-61025, 2017 U.S. Dist. LEXIS 222386, at *10 (S.D. Fla. Nov. 20, 2017) (quoting *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299, 1304 (M.D. Fla 2015)) (internal quotation marks omitted). In *Hansen*, the plaintiff sued an executive of an aviation holdings company for constructive fraud based on a transaction entered into by both parties. *Hansen*, No. 17-cv-61025, 2017 U.S. Dist. LEXIS 222386, at *2. The defendant moved to dismiss the claim, arguing that the plaintiff failed to plead sufficient facts to establish the existence of a confidential or fiduciary relationship needed to support a constructive fraud claim. *Id.* at *8. While no statutorily established fiduciary relationship or express partnership existed between the plaintiff and the defendant, this Court nevertheless found that the plaintiff pleaded sufficient facts to take the relationship beyond a traditional arms-length business relationship. As such, the defendant's motion to dismiss was denied. *Id.* at *17.

Here, Plaintiff alleges it was injured by Defendant Boca Aircraft, "acting in reliance on its closeness to and built loyalty over the years of having its Jet maintained at their facility." ECF No. [63], at ¶ 27. At the time it hired Defendant Boca Aircraft to perform the 300-hour inspection, the parties had a relationship where Plaintiff "would adhere to the guidance of Defendant [Boca Aircraft] as a maintenance professional after years of working together to service and repair the Jet." *Id.* at ¶ 24. Due to Plaintiff's lack of maintenance experience, "it deferred and detrimentally relied on the advice of the Defendant" that the Jet was "flight ready." *Id.* at ¶ 25. Plaintiff has pleaded sufficient facts to establish a relationship between Plaintiff and Defendant Boca Aircraft that goes beyond an ordinary, arms-length business relationship. Taking the allegations as true, the

Court finds that Plaintiff has sufficiently pleaded a claim for breach of a fiduciary relationship. Defendant Boca Aircraft's Motion, as it relates to Count I of the Motion to Dismiss, is therefore denied.

### ii. Count II - Violation of Florida's Deceptive and Unfair Trade Practices Act

To assert a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), a plaintiff must allege some facts as to each of the three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Tippens v. Round Island Plantation L.L.C.*, No. 09-CV-14036-MOORE/LYNCH, 2009 U.S. Dist. LEXIS 66224, at *41 (S.D. Fla. July 31, 2009).

Defendant Boca Aircraft argues that Count II for violation of FDUTPA is solely based on the use of a preapproved credit card authorization for the collection of unpaid fees from Plaintiff, which is neither "deceptive" nor "unfair" and fails to meet the first prong of the offense. ECF No. [70], at 7. Defendant Boca Aircraft argues that this count is a response and/or defense to its Counterclaim for unpaid fees for services rendered to the Jet, and not a stand-alone cause of action. *Id.* at 6. Plaintiff responds that Defendant Boca Aircraft knew from the filing of this suit that it was not authorized to make the charge. ECF No. [72], at 11. Plaintiff further argues that since the alleged credit card authorization predates the Counterclaim, Defendant Boca Aircraft either maliciously (or recklessly) filed the Counterclaim or forged the authorization form. *Id.*

FDUTPA "is to be liberally construed to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in conduct of any trade or commerce." *Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1351 (S.D. Fla. 2019). A violation of FDUTPA may be based on "any law, statute, rule, regulation or ordinance which proscribes unfair methods of competition, *or unfair, deceptive or unconscionable acts or practices.*" § 501.203(3)(c), Fla. Stat. (emphasis added).

In the Amended Complaint, Plaintiff alleges that Defendant Boca Aircraft engaged in deceptive acts and unfair practices by using an invalid authorization form to charge Plaintiff's credit card without Plaintiff's consent. ECF No. [63], at ¶¶ 31, 33-35. Plaintiff further alleges that the actual damage was proximately caused by the charging of its credit card on January 25, 2019. ECF No. [63], at ¶¶ 33, 37. Defendant Boca Aircraft's argument that it had valid authorization to charge the Plaintiff's credit card is an issue of fact not appropriate for the dismissal stage. At this stage of the proceedings, the Court is not called to determine the validity of the authorization form at issue. Taking the allegations as true, the Court determines that Plaintiff has adequately pleaded a claim for a violation of FDUTPA. Defendant Boca Aircraft's Motion to Dismiss as it relates to Count II is denied.

### iii. <u>Count III - Negligent Misrepresentation</u>

The elements of a claim for negligent misrepresentation are as follows: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation. *McGee v. JP Morgan Chase Bank, NA*, 520 Fed. Appx. 829, 831 (11th Cir. 2013).

Defendant Boca Aircraft moves to dismiss Count III for Negligent Misrepresentation as Plaintiff has failed to plead the facts necessary to establish prongs (1) and (3) of this offense. ECF No. [70], at 7-8. Defendant Boca Aircraft denies that it made misrepresentations of material fact or represented that the Jet was "flight ready." *Id.* at 7. Defendant Boca Aircraft also argues that Plaintiff failed to assert that the aircraft was not "flight ready." *Id*. Additionally, Defendant Boca

Aircraft argues that Plaintiff has failed to allege that it intended to induce any action from Plaintiff as a result of the alleged misrepresentation. *Id.* at 8. Plaintiff responds that it relied on representations from Defendant Boca Aircraft that the Jet was "flight ready," and Defendant Boca Aircraft knew or should have known that the representations were false. ECF No. [72], at 8. Plaintiff argues that Defendant Boca Aircraft's statements as to whether the Jet was actually "flight ready" is an affirmative defense, which should not be considered on a motion to dismiss. *Id.* at 8-9.

Claims for negligent misrepresentation under Florida law must be pleaded to meet the particularity standard required by Rule 9 of the Federal Rules of Civil Procedure, because negligent misrepresentation sounds in fraud. *See McGee v. JP Morgan Chase Bank, NA*, 520 Fed. Appx. 829, 831 (11th Cir.2013); *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1288–89 (S.D. Fla. 2011). Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of this particularity requirement is to "alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). This heightened pleading standard also applies to common-law negligent misrepresentation claims. *See Arnold v. McFall*, 839 F. Supp. 2d 1281, 1288–89 (S.D. Fla. 2011). Rule 9(b) may be satisfied if a plaintiff sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) the resulting consequence to the defendants. *Brooks v. Blue Cross & Blue Shield of Fla.*, Inc., 116 F.3d 1364, 1371 (11th Cir.1997).

Here, Plaintiff alleges that on or about June 26, 2018, Defendant Boca Aircraft "intentionally made representations" that the subject aircraft was "flight ready," even though "[t]he Jet was not flight ready." ECF No. [63], at ¶¶ 9, 11, 41. Plaintiff further alleges that Defendant knew or should have known this statement was false, and that Plaintiff acted in reliance on Defendant's representation, which caused Plaintiff's injury. ECF No. [63], at ¶¶ 41-42. In an attempt to evidence such statement, Plaintiff attached an unsigned copy of the Criteria for the Inspection. *See* Exh. A., ECF No. [63], at 13-23. Setting aside the fact that this document is unsigned, the words "flight ready" do not appear anywhere in the document. Therefore, the alleged misrepresentation that Plaintiff is claiming Defendant Boca Aircraft made is not even reflected in its own exhibit. *Id.* The Amended Complaint also fails to identify the person who Plaintiff alleges made the misrepresentation to it. As required by Rule 9(b), while Plaintiff has identified the time and place, it does not indicate how the precise alleged misrepresentation was made, nor the person responsible for making the statement. Therefore, the Court finds that Plaintiff has not alleged a claim with sufficient particularity to support a claim for negligent misrepresentation. Accordingly, Defendant Boca Aircraft's Motion to Dismiss as it relates to Count III is granted. To the extent that Plaintiff can cure these defects, the Court will grant it leave to amend.

### iv. <u>Count IV - Negligence</u>

The four elements necessary to sustain a negligence claim are: (1) a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on the defendant's part to conform to the standard required: a breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury, which is commonly known as "legal cause," or "proximate

cause," and which includes the notion of cause in fact; and (4) actual loss or damage. *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010).

Defendant Boca Aircraft moves to dismiss the negligence count arguing that Plaintiff has failed to allege that a duty existed with regard to the anti-lock brake system, therefore failing to meet the first prong of the offense. ECF No. [70], at 8. While Plaintiff and Defendant Boca Aircraft agree that Defendant Boca Aircraft owed a duty of conduct for the 300-hour multi-point inspection, Plaintiff alleges that this duty extended to the anti-lock brakes and was breached when Defendant Boca Aircraft damaged the anti-lock brakes. ECF No. [63], at ¶ 46.

In its Motion, Defendant Boca Aircraft argues that the duty owed to Plaintiff was a 300-hour multi-point inspection, not a duty to service the anti-lock brakes. ECF No. [70], at 9. Defendant Boca Aircraft further alleges that it did not service, repair, or maintain the Jet's anti-lock brake systems. *Id.* However, Plaintiff's Amended Complaint plainly states that "[i]n addition to the multi-point inspection, [Defendant Boca Aircraft] performed repair work to the Jets anti-lock brake system." ECF No. [63], at ¶ 10. Plaintiff alleges that, by agreeing to perform the 300-hour multipoint inspection, Defendant Boca Aircraft owed a duty of conduct to Plaintiff, which it breached when it damaged the anti-lock brakes. *Id.* at ¶ 46. Specifically, Plaintiff alleges that while working on the brakes system, the anti-lock brake system was damaged, which caused the Jet to sustain damage upon impact. *Id.* at ¶ 47. Plaintiff alleges that Defendant Boca Aircraft subsequently made representations that the Jet was "flight ready," which Defendant Boca Aircraft knew or should have known was false. *Id.* at ¶ 46. Plaintiff alleges to have been injured as a result. *Id.* at ¶¶ 46, 48. Whether Defendant Boca Aircraft actually worked on the Jet's anti-lock brake system is an issue of fact, which is not appropriately determined on a motion to dismiss. The Court

finds that Plaintiff has alleged that a duty existed, and denies Defendant Boca Aircraft's Motion to Dismiss as it relates to Count IV.

### v. <u>Count V - Conversion</u>

Under Florida law, the tort of conversion is an unauthorized act that deprives another of his property permanently or for an indefinite time. *See National Union Fire Ins. Co. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir.1985). "[C]onversion is simply an intentional and wrongful exercise of dominion or control over a chattel, which seriously interferes with the owner's rights in the chattel." *Middleton v. M/V Glory Sky I*, 567 F. App'x 811, 813 (11th Cir. 2014) (internal quotations omitted); *see also* Restatement (Second) of Torts § 222A (1965). Demand for return of the converted property is not an element of conversion. *Middleton*, 567 F. App'x at 814; *see Senfeld v. Bank of N.S. Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984) ("[W]hile a demand and refusal constitute evidence that a conversion has occurred, it is unnecessary to prove a demand and refusal where the conversion can be otherwise shown."); *see also 8A Am. Jur. 2d Bailments § 74* ("[T]he elements of demand and refusal are not required if other evidence establishes an act of conversion.").

Defendant Boca Aircraft argues that the allegedly converted funds were actually owed to Defendant Boca Aircraft, as evidenced by the unpaid invoices that Plaintiff attached as *Exhibit B* to the Amended Complaint. ECF No. [70], at 10. Defendant Boca Aircraft further argues that Plaintiff failed to make a demand for the return of the allegedly converted funds, which Plaintiff claims is a necessary element of a claim for conversion. *Id.* Plaintiff responds that if a demand for return is futile, it is not needed to sufficiently plead a claim for conversion. ECF No. [72], at 12. Plaintiff argues that, since litigation had already commenced, requesting the illegally converted

funds from the Defendant Boca Aircraft before filing suit for conversion would have been pointless. *Id.*

However, the law in Florida is clear—a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft."). As recognized in *Gasparini,* the general rule does not foreclose a claim for civil theft or conversion under certain limited circumstances. *Walker v. Figarola*, 59 So.3d 188, 190 (Fla.3d DCA 2011) ("This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract."); *See also Ginsberg v. Lennar Fla. Holdings, Inc*., 645 So. 2d 490, 495 (Fla. 3d DCA 1994) ("[A] plaintiff may not circumvent the contractual relationship by bringing an action in tort.").

Plaintiff's allegations that relate to its claim of Conversion involve compliance with terms of a business agreement for services rendered to its Jet, which presumably involve some underlying written or oral contract between Plaintiff and Defendant Boca Aircraft. ECF No. [63], at 52. Neither an obligation to pay money nor a breach of contract generally gives rise to a claim of conversion in tort. *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990).

Notwithstanding this bright-line rule, money in a bank account can properly be the subject of a conversion action when the account and amount are separate and ascertainable, and the specific money in question can be identified. *See Allen v. Gordon*, 429 So. 2d 369 (Fla. 3d DCA 1983); *see also Capital Factors v. Homeline Corp. (In re Gen. Plastics Corp.)*, 158 B.R. 258, 287 (Bankr. S.D. Fla. 1993) ("Money is specifically identifiable when currency is delivered into the

possession of the defendant in a sealed container or dollars are deposited in a trust account. In these cases, the very dollars delivered or deposited are due and returnable to the plaintiff.") For example, in *Allen v. Gordon*, the Florida First District Court of Appeal held that the money in question was specific and identifiable where the defendant had withdrawn the balances of a joint savings account and a certificate of deposit account. *Allen*, 429 So. 2d at 371.

In contrast, "[a] mere obligation to pay money may not be enforced by an action for conversion." *Capital Bank v. G & J Investments Corp.*, 468 So. 2d 534, 535 (Fla. 3d DCA 1985). In *Capital Bank*, the payee sought to hold a bank liable for conversion, claiming that the instrument had been accepted by the bank prior to the bank's receipt of a stop payment order. *Id.* The Third District Court of Appeal held that plaintiff simply sought to enforce an oral contract by whose terms the bank obligated itself to pay money generally and that neither the pleadings nor the proof sufficiently identified the money so as to support a conversion claim. *Id.*

Similarly, here, the factual allegations and supporting exhibits fail to indicate the amount Plaintiff claims to be converted. The Amended Complaint merely references Defendant Boca Aircraft's use of a credit card authorization form to satisfy, in whole or in part, money Plaintiff allegedly owed. ECF No. [63], at ¶ 34. Plaintiff alleges that Defendant Boca Aircraft charged Plaintiff for work performed without Plaintiff's consent and wrongfully took the Plaintiff's property. *Id.* at ¶ 52. This allegation, however, fails to specifically identify the property subject to Plaintiff's conversion claim beyond that of a general charge. *Id.* As such, the Court agrees with Defendant Boca Aircraft that Plaintiff cannot, based upon the facts alleged, set forth a claim for conversion and any amendment would be futile. As such, Count V for Conversion is dismissed with prejudice.

### b. Defendant Skurka's Motion

Defendant Skurka has also filed Motions to Dismiss the Amended Complaint and Defendant Advent's Crossclaim, respectively. ECF Nos. [82], [99]. In Defendant Skurka's Motions to Dismiss, it argues dismissal is proper because the Court lacks personal jurisdiction to hear the case against it. *See Id.* In its Motions, Defendant Skurka argues that neither general nor specific jurisdiction can be established against it in the instant action. *Id.* at 2. The Court will address each jurisdictional argument in turn.

A federal court sitting in diversity must undertake a two-step inquiry to determine whether personal jurisdiction exists. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). First, it must determine whether the exercise of jurisdiction is appropriate under the state long-arm statute. *Id.* Second, it must ensure that jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*

Florida's long-arm statute, Fla. Stat. § 48.193, "addresses both specific and general jurisdiction." *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011). Under Florida's long arm statute, general jurisdiction exists where the defendant engages in "substantial and not isolated activity" within Florida, "whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). This requires "continuous and systematic general business contact" with Florida. *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999). Specific jurisdiction exists where the non-resident defendant engages in specific enumerated actions, which give rise to the stated cause of action. Fla. Stat. § 48.193(1).

Jurisdiction must also comport with Due Process. The court must apply a three-part test to determine "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the

defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* The core of the analysis centers on whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945).

### i. General Jurisdiction

Pursuant to Florida's general jurisdiction, a defendant may be haled into a Florida court if it is "engaged in substantial and not isolated activity within [the] state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.' Fla. Stat. § 48.193(2). In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the United States Supreme Court stated that "a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l. Shoe Co.*, 326 U.S. at 317).

Defendant Skurka argues that it is not "at home" in Florida because its principal place of business is in California and state of incorporation is Delaware. ECF No. [82], at 2, 3. Plaintiff responds that Skurka has sufficient contacts with the forum to show it is essentially "at home" in

Florida. ECF No. [91], at 7-8.[1] Both parties rely on *Daimler AG v. Bauman* in supporting their positions. In *Daimler*, Argentinian plaintiffs brought suit in a California court against a German corporation. *Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014). Plaintiffs alleged that an Argentinian subsidiary of defendant collaborated with state security forces during Argentina's 1976-1983 "Dirty War" to kidnap, detain, torture, and kill certain Argentina workers. *Id.* The basis for personal jurisdiction over the defendant was defendant's United States subsidiary and its indirect contacts with California. *Id.* at 119. Neither the defendant in *Daimler* nor its subsidiary was incorporated or had a principal place of business in California. *Id.* at 123. The defendant's subsidiary was its sole United States distributor and it maintained multiple facilities in California. *Id.* The Supreme Court found that defendant's contacts with California, ***even with the subsidiary's contacts attributed to it***, were insufficient for the purposes of establishing general jurisdiction. *Id.* at 124. But the Court made clear that a corporation is not "subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business," just that those places serve as "paradigm all-purpose forums." *Id.* at 137 (emphasis in original). Citing the *Goodyear* standard, the Court again wrote, "[t]he inquiry…is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler AG*, 571 U.S. at 137 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Further, in *Waite v. AII Acquisition Corporation*, the Eleventh Circuit expanded on the contacts necessary to render a corporation "at home" in the forum state. *Waite v. AII Acquisition Corporation*, 901 F.3d 1307 (11th Cir. 2018). When a defendant's state of incorporation and

---

[1] In filing its response in opposition to Defendant's Skurka's Motion to Dismiss its Crossclaim, ECF No. [99], Defendant Advent has reincorporated the arguments raised by Plaintiff in its Response in Opposition. *See* ECF No. [104].

principal place of business are not in the forum state, the court's task is to decide whether the case is one of the exceptional cases in which general jurisdiction is still proper. *Id.* at 1317-18. "To make this decision, [the court] must consider whether 'the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.'" *Waite,* 901 F.3d at 1318 (quoting *Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1205 (11th Cir. 2015)). In *Waite*, a plaintiff diagnosed with mesothelioma caused by asbestos exposure in Massachusetts later sued an asbestos manufacturer in Florida. *Id.* at 1310. Despite the facts that the defendant manufacturer was registered to do business in Florida, maintained an agent for service of process in Florida, hired a Florida distributor, had customers in Florida, and operated a plant in Brevard County, the Court found it was not "at home" in Florida. *Id.* at 1318. The Court noted that, outside of a corporation's place of incorporation and principal place of business, only a limited set of affiliations will be substantial enough to make the corporation at home in that State. *Id.* at 1317.

Here, no exceptional set of affiliations with the forum state exists. The only facts alleged in the Amended Complaint demonstrating that Defendant Skurka has any ties to the State of Florida are as follows: "Defendant Skurka is a Delaware Corporation that does business in Palm Beach County." ECF No. [63], at ¶ 5. Plaintiff's response to Defendant Boca Aircraft's Motion to Dismiss argues that Skurka is at home in Florida because it advertises nationwide (including Florida), purchased the company that manufactured the Subject Generators, and has a single distributor and representative located in Florida. ECF No. [82], at 3-4. While Defendant Skurka does not dispute these facts, it does qualify them with the unrebutted sworn testimony of its president, Michael P. Barnaba ("Barnaba"). ECF No. [82-1]. In the Affidavit, Barnaba states that Defendant Skurka is not registered to do business in Florida and does not have an agent for service

of process in Florida. *Id.* at ¶ 5. He further testifies that Defendant Skurka does not have any offices, employees, or bank accounts in Florida. *Id.* at ¶ 6. Defendant Skurka does not own or rent real or personal property in Florida and has no ownership interest in any company or entity in Florida. *Id.* at ¶ 7. Defendant Skurka does not pay taxes in Florida. *Id.* at ¶ 7. Although Defendant Skurka advertises its products nationwide and maintains a website, Barnaba affirms that Defendant Skurka does not specifically direct its advertising toward Florida residents or Florida-specific publications. *Id.* at ¶ 8. Further, Barnaba states that Aircraft Parts Corporation ("APC") manufactured the Subject Generators in New York. *Id.* at ¶ 10. APC then shipped the Subject Generators to Eclipse Aviation in Albuquerque, New Mexico in 2007. *Id.* In 2008, Defendant Skurka's parent corporation, TransDigm, Inc., acquired APC. Subsequently, certain assets of APC were transferred to Skurka and APC was dissolved on September 21, 2012. *Id.* at ¶ 11. Neither Defendant Skurka nor APC designed, manufactured, sold, distributed, or installed the Subject Generators in Florida. *Id.* at ¶¶ 12-13. The Subject Generators were never returned to Defendant Skurka or APC for overhaul, service, maintenance, repair, or for any other reason. *Id.* at ¶ 14.

Most compelling to this Court is Barnaba's testimony that Defendant Skurka's Florida representative is not even an employee of Defendant Skurka, but instead works for Avionics Technologies, Inc., a nationwide manufacturers' representative firm with a broad product portfolio. *Id.* at ¶ 15. "This representative was not involved in the sale of the Subject Generators, and did not perform any maintenance, overhaul, or service of any kind on the Subject Generators." *Id.* Defendant Skurka has several distributors, one of which, Air Parts & Supply Company ("APSCO"), is located in Florida. APSCO distributes Defendant Skurka's products across the United States and other parts of the world. *Id.* at ¶ 16. Defendant Skurka does not control when,

where, or to whom the products are marketed, sold or distributed by APSCO, or any other distributor. *Id.* Further, APSCO did not distribute the Subject Generators. *Id.*

In support of its Opposition to Defendant Skurka's Motion to Dismiss its Crossclaim, Defendant Advent filed the affidavit of John Maggio, an attorney for Defendant Advent. *See* ECF No. [106] (the "Maggio Affidavit"). The Maggio Affidavit affirms that Defendant Advent manufactured and sold the braking system that was installed on the Jet, but claims it had no involvement with the purchase, installation, or maintenance of the braking system. *Id.* at ¶¶ 6, 9. The Maggio Affidavit further asserts that Defendant Skurka manufactured the Subject Generators aboard the Jet that allegedly failed during flight. *Id.* at ¶ 7. The Maggio Affidavit states that Defendants Skurka and Advent "have no contractual relationship that establishes any obligations and duties owed between them with respect to this action." *Id.* at ¶ 8. The Maggio Affidavit, however, fails to rebut the lack of contacts Defendant Skurka has with the forum state.

Here, Plaintiff's arguments for the conferral of jurisdiction over Defendant Skurka arise from indirect contacts of its subsidiary. Just as the Court in *Daimler* could not establish jurisdiction based on the indirect contacts of a subsidiary, this Court cannot impute jurisdiction through Defendant's in-state distributor.

While Plaintiff is correct that certain contacts with the forum state can establish general jurisdiction, this Court does not find that such contacts exist here. As such, exercising general jurisdiction over Defendant Skurka would violate due process. The Court further notes that Defendant Skurka's connections to the forum state are even weaker than the defendant's contacts in *Waite*, where the Eleventh Circuit found no jurisdiction existed over the defendant. *See Waite*,

901 F.3d at 1322. Plaintiff has failed to establish facts sufficient to bring the Defendant Skurka within this Court's jurisdiction.[2]

### ii. **Specific Jurisdiction**

For specific jurisdiction, the relevant portion of Florida's long-arm statute provides that a court may exercise jurisdiction over a party "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). The business activity must demonstrate a general course of business for pecuniary benefit connected with the alleged tort. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).

In its Response, Plaintiff argues that the Court has specific jurisdiction over Defendant Skurka. ECF No. [91], at 7. Plaintiff's main argument for specific jurisdiction is the fact that the plane crash occurred in South Florida and Defendant Skurka manufactured the generators that caused the crash. *Id.* Defendant Skurka's Motion to Dismiss highlights both its lack of connections and its Florida distributor's lack of connections to the Subject Generators. Neither Defendant Skurka nor its in-state distributor ever encountered the Subject Generators in Florida before or after the sale. ECF No. [82], at 3. Defendant Skurka argues that the Subject Generators were neither designed, manufactured, sold, distributed, nor installed in Florida. *Id.*

---

[2] Alternatively, Plaintiff argues should the Court agree that it lacks personal jurisdiction over Defendant Skurka that it be permitted to conduct jurisdictional discovery. ECF No. [91], at 2. The Court first notes that Defendant Skurka was named as a defendant in this action in April 2019. As such, Plaintiff has had over three months to conduct discovery. The Court further notes that the Plaintiff has not moved independently to stay this Court's ruling on Defendant Skurka's Motion to Dismiss and has instead improperly incorporated this request into its response to its Motion. *Wolf v. Celebrity Cruises*, Inc., 683 F. App'x 786, 792 (11th Cir. 2017) (holding that the district court properly denied cruise ship passenger's general request for jurisdictional discovery to determine whether shore excursion owner in Costa Rica had sufficient contacts with Florida to warrant exercise of personal jurisdiction over owner in negligence action, where such request, which was made over four months after filing of complaint and was buried within his response to owner's motion to dismiss.).

Here, the record is devoid of any evidence showing that Defendant Skurka purposely availed itself to the benefits and protections of Florida. The Subject Generators were manufactured in New York, then sold and shipped to New Mexico by a company that was subsequently absorbed by Defendant Skurka. ECF No. [82], at 3. Defendant further claims that neither of the Subject Generators were ever returned to it or its original manufacturer for overhaul service, maintenance, or any other reason, in any jurisdiction, let alone Florida. *Id.* Plaintiff argues these assertions go purely towards the merits of the claims and not the issue of jurisdiction. ECF No. [91], at 8. The Court disagrees and finds these factors relevant in determining Defendant Skurka's connections to the Subject Generators, which give rise to this lawsuit.

Plaintiff also argues that Defendant Skurka advertises nationwide, including Florida. However, this is insufficient to establish general or specific jurisdiction. To hold otherwise would imply that defendants who maintain a website with nationwide access could submit themselves to jurisdiction anywhere in the country, which would violate traditional notions of fair play and substantial justice. "[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must 'arise out of or relate to' at least one of defendant's contacts with the forum." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). For example, in *Fraser v. Smith*, the plaintiff was aboard a boat in the Turks and Caicos Islands when it exploded, killing him and injuring his family members. *Fraser v. Smith*, 594 F.3d 842, 844 (11th Cir. 2010). The plaintiff's estate and family members filed suit against the boat's operator in Florida, alleging that there was personal jurisdiction over the defendant because it maintained a website accessible in Florida; advertised in the United States, including in the Miami Herald; purchased boats in Florida; and sent its employees to Florida for a training course. *Id.* at 844-45. The Eleventh Circuit concluded that some

of the defendant's Florida contacts, including its advertisements in Florida and its website, were irrelevant because the plaintiffs had not viewed them; thus, those contacts or activities "[could not] reasonably be construed as but-for causes of the accident." *Id.* at 850.

For the aforementioned reasons, this Court cannot exercise specific jurisdiction over Defendant Skurka. Although the crash occurred in Florida, this suit did not arise out of, or relate to Defendant Skurka's contacts with this forum. Thus, exercising specific jurisdiction over Defendant Skurka would violate due process. Because neither general nor specific jurisdiction can be asserted over Defendant Skurka in this action the exercise of jurisdiction is inappropriate under the Florida state long-arm statute.

In conducting its inquiry as it relates to the Florida long-arm statute, it is therefore also clear that jurisdiction over Defendant Skurka would also not comport with Due Process. As stated above, the Plaintiff's claim again Defendant Skurka does not arise out of or relate to at least one of Defendant Skurka's contacts with the State of Florida. Nor has Defendant Skurka purposefully availed itself of the privilege of conducting activities within the forum state. Therefore, the exercise of personal jurisdiction over Defendant Skurka would offend the traditional notions of fair play and substantial justice. This action as it relates to Defendant Skurka is due to be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Boca Aircraft Maintenance, LLC's Motion to Dismiss, **ECF No. [70]**, is **GRANTED IN PART AND DENIED IN PART**. Count III of Plaintiff's Amended Complaint, **ECF No. [63]**, is **DISMISSED WITHOUT PREJUDICE**. To the extent Plaintiff can cure the defects of its claim for Negligent Misrepresentation, Plaintiff is permitted to file its Second Amended

Complaint *no later than August 9, 2019*. Count V of Plaintiff's Amended Complaint, **ECF No. [63]**, is **DISMISSED WITH PREJUDICE**.   Defendant Boca Aircraft shall file its Answer to the remaining Counts *no later than August 19, 2019*.

2. Defendant Skurka Aerospace, Inc.'s Motion to Dismiss, **ECF No. [82]**, is **GRANTED**. **The above-styled case, as it relates to Defendant Skurka Aerospace, Inc., is DISMISSED**.

3. Defendant Skurka Aerospace, Inc.'s Motion to Stay, **ECF No. [83]**, is **DENIED AS MOOT**.

4. Defendant Skurka Aerospace, Inc.'s Motion to Stay, **ECF No. [100]**, is **DENIED AS MOOT**.

5. Defendant Skurka Aerospace, Inc.'s Motion to Dismiss, **ECF No. [99]**, is **GRANTED**.

6. Defendant Skurka Aerospace, Inc.'s Motion to Dismiss, **ECF No. [101]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on August 2, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record